**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WEH MAGIC VALLEY HOLDINGS, LLC, a Delaware limited liability company, | No. 18-35276 |
| | D.C. No. 6:15-cv-00050-SEH |
| Plaintiff-Appellant, | |
| v. | **MEMORANDUM**[*] |
| EIH PARENT, LLC, an Idaho limited liability company; JAMES CARKULIS, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted April 9, 2019
Seattle, Washington

Before: W. FLETCHER, CALLAHAN, and CHRISTEN, Circuit Judges.

In 2014, WEH Magic Valley Holdings, LLC ("WEH") sought to purchase

membership in Exergy Idaho Holdings ("EIH"), which was wholly held by Exergy

Idaho Holdings Parent ("EIHP"). James Carkulis, the president of EIHP, learned

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

that certain Reserves held by a third party for the benefit of EIH that were expected to be released in 2027, would be available as soon as 2015. Based on this information, he negotiated an increase in the purchase price. When the Reserves, valued at $583,868, actually became available to EIH in June 2014, Carkulis had the amount paid directly to a creditor of a separate Carkulis-owned company, and he hid this fact from WEH. The Purchase and Sales Agreement ("PSA"), including the increased purchase price, was agreed to by June 30, 2014, and closed on August 1, 2014. WEH brought this action alleging breach of contract and fraud by EIH and Carkulis. The district court sua sponte concluded that the Reserves were not covered by the PSA, and then entered summary judgment for the defendants, concluding that WEH had not alleged a viable breach of contract or fraud claim.

A grant of summary judgment is reviewed de novo. *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017) (citing Fed. R. Civ. P. 56(a); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004)).

The district court erred in concluding that the PSA unambiguously provided that WEH was not entitled to the distribution of the Reserves because the Reserves were not a part of the Equity Interests to be sold to WEH, and the district court thus erred in awarding summary judgment to defendants on the contract claim. If "reasonable minds could differ on the meaning of the language used [in a contract], the meaning of the words becomes an issue of fact if there is relevant extrinsic evidence of the parties' actual intent." *Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2nd Cir. 2000) (citation omitted). There are numerous factual issues as to whether the Reserves were promised as part of the contract. In particular, there are facts supporting such a conclusion in Appendix A and Exhibit C, which the parties have stipulated form part of the contract. The Base Case Model in Exhibit C lists the $583,800 Reserves amount under the label "Supplemental Reserves Balance at Closing." Appendix A documents the parties negotiated Annual Minimum and Annual Cap range of distributions for the years 2014 through 2031. For 2015, Appendix A lists a minimum amount of $1,249,335, which is more than three times the 2014 minimum. In a July 2, 2014 email to Carkulis, as well as in his deposition, Bill Green of WEH made clear his understanding that the "relatively high figure in 2015 relates to the release of funds in the Supplemental Reserves Account." Based on these facts and others like them, there is a triable question whether EIH's failure to transfer the Reserves to WEH

3

was a breach of contract. Even EIH acknowledged at oral argument that WEH has a triable contract claim.

The district court also erred in granting summary judgment on the fraud claim. The district court concluded that the fraud claim fails "since it is based on the same factual allegations and seeks the same damages as the breach of contract claim." We do not agree. WEH's fraud claim is based on a series of actions over and above those involved in the breach of contract claim. These actions include the inducement of a higher purchase price in consideration of the Reserves, the receipt and conversion of the Reserves just prior to closing, the cover up of these actions, and the failure to disclose to WEH the absence of the Reserves at closing. It is a triable question whether these additional actions amount to fraud. Furthermore, on this record we are not convinced that under the applicable New York law, WEH cannot assert a fraud claim against Carkulis. *Compare Bridgestone/Fireside v. Recovery Credit Servs.*, 98 F.3d 13 (2d Cir. 1996), with *Cohen v. Koenig*, 25 F.3d 1168 (2d Cir. 1994) and *Triangle Underwriters v. Honeywell, Inc.*, 605 F.2d 737 (2d Cir. 1979).[1]

**REVERSED and REMANDED for further proceedings.**

---

[1] Because WEH on appeal does not challenge the district court's rejection of its claims against Carkulis for constructive fraud, negligent misrepresentation, and unjust enrichment, we do not address them.